**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIS HORTON and LUIS SAEZ,**

                                 **Plaintiffs,**

   **-against-**                                        1:14-CV-1050

**ERIC GUILLOT,**

                                 **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**


**I.   INTRODUCTION**

Plaintiffs Willis Horton ("Horton") and Luis Saez ("Saez") (collectively "Plaintiffs") bring this action for defamation, slander, and libel per se as a result of statements, comments, and writings made by the Defendant, Eric Guillot ("Guillot" or "Defendant"). Defendant moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Horton's claims, contending that the pleadings fail to adequately allege that he made a defamatory statement about Horton. The Court has considered the parties' submissions, and, for the reasons that follow, Guillot's motion is denied.

1

**II. STANDARD OF REVIEW**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the Defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. At 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., at 1965. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678. Legal conclusions must be supported by factual allegations. Id.

2

**III. BACKGROUND**[1]

Horton is the owner and manager of a thoroughbred racehorse known as "Will Take Charge." Amend. Compl. at ¶ 9. Saez is a jockey and was aboard "Will Take Charge" in the 2013 Travers Stakes at Saratoga Raceway. Amend. Compl. at ¶ 10. Guillot is a trainer of thoroughbred racehorses including "Moreno," which raced against "Will Take Charge" in the 2013 Travers Stakes. Amend. Compl. at ¶ 11. In that race, "Will Take Charge", ridden by Saez, was the winner; "Moreno" finished second. Amend. Compl. at ¶ 12.

"Following the completion of the race, more specifically on August 30, 2013, and thereinafter on August 31, 2013, September 6, 2013, September 15, 2013, October 28, 2013, and August 1, 2014, Defendant accused Saez and management, including Horton, of using an electric device on 'Will Take Charge'." Amend. Compl. at ¶ 13. Defendant made various oral and written statements to other people including, but not limited to, various reporters for the *New York Daily News*, the *Times Union*, the *Racing Daily Form*, the *Courier Journal* and [*The Saratogian*]."[2] These various statements were summarized in a complaint made by Guillot to the NYS Gaming Commission. Amend. Compl. at 14. Specifically, Defendant stated:

> I Eric Guillot am filing a complaint for our lost [sic] in the race called Traver's at Saratoga on Aug 24th 2013 – My horse

---

[1] For the purposes of this motion, the allegations in the First Amended Complaint are deemed to be true.

[2] The First Amended Complaint states that statements were made by Guillot to "*The Saratorian.*" It is clear that this was a typographical error, meant to be "*The Saratogian*," and the Court will regard it as such.

3

> Moreno was beat by a nose on the wire by [a] horse named Take
> Charge Indy [sic]– After suffering biggest defeat in our career
> – my brother Chip . . . had recorded races on NBC for family
> once he got home and watched replay on NBC on big plasma TV he
> said it was obvious the kid had trouble celebrating cuss [sic]
> of black device in right hand switching too left hand and
> tucking it under left shoulder under saddle pad! We feel this
> has crossed every integrity line of horse racing and would like
> this investigated and resolved!

Compl. at ¶ 15.

On August 31, 2013, Defendant repeated his accusations to a reporter for the *Times Union*, the quotes of which were contained in a written article and published to the general public. A similar article was published in the *New York Daily News* on August 31, 2013. Amend. Compl. at ¶ 16.

On September 6, 2013, Defendant said to a reporter at the [*Daily Racing Form*][3], as memorialized in an article: "To me, the horse was dead in the water then jumps out from the wire when he hit him with the machine;" and, "Pretty suspicious why they had a jock change coming off a second place in the Jim Dandy." It is alleged that the "they" referenced in this statement refers to the owners and managers of "Will Take Charge," and, therefore, is "of and about" Horton. Amend. Compl. at ¶ 17.

On September 15, 2013, Defendant said to a reporter from the *New York Daily News*, as published in a written article: "They won't use the machine on him in back to back races." It is again alleged

---

[3] The First Amended Complaint states that statements were made by Guillot to a reporter for the "*Racing Daily Form*." It is clear that this was a typographical error, meant to be "*Daily Racing Form*," and the Court will regard it as such.

4

that the "they" in this statement refers to the ownership and management of "Will Take Charge," and, therefore, was "of and concerning" Horton. Amend. Compl. at ¶ 18.

On October 4, 2013, the New York State Gaming Commission unanimously concluded that Saez was not carrying any sort of electrical device in the 2013 Travers Stakes, and deemed Guillot's allegations unsubstantiated. See Defendant's Exhibit "2" [Dkt. #17-3]. After learning of the Commission's conclusion, Guillot told a reporter from the *Courier Journal*, as published in an article, that he apologizes to management but that "I'd do it all over again." On August 1, 2014, Guillot told a reporter from *The Saratogian*: "Why would I have any regret? What I saw, if I took 100 consenting adults and sent them the video, 99 thought it was right. That's part of life. If it happened Saturday, I'd do it again." Amend. Compl. at ¶ 19.

**IV. DISCUSSION**

Plaintiffs assert claims for defamation, slander, and libel per se. Under New York law, the elements for defamation, either libel or slander, include: (1) a false and defamatory statement of fact, (2) regarding the plaintiff, (3) the publication of the written or oral statement to a third party, and (4) injury to plaintiff. See Murphy v. Cadillac Rubber & Plastics, Inc., 946 F. Supp. 1108, 1122 (W.D.N.Y. 1996)(citations omitted); Celi v. Canadian Occidental Petroleum Ltd. 804 F. Supp. 465, 470 (E.D.N.Y. 1992). Defendant

5

argues that Horton's claims must be dismissed because Horton is not specifically named in any of the alleged defamatory statements. Defendant contends, therefore, that the pleadings fail to establish or allege the second element of a defamation claim by Horton.

In reviewing the Amended Complaint, the Court finds that Plaintiffs have alleged sufficient facts to support plausible defamation claims by each Plaintiff. Plaintiffs correctly note that New York Civil Procedure Law § 3016(a), which requires that defamation claims be stated with particularity in State Court pleadings, is inapplicable in the present case. Rule 8(a)(2) merely requires a plaintiff to set forth "a short and plain statement of the claim showing that he or she is entitled to relief." Pasqualini v. Mortgageit Inc., 498 F. Supp.2d 659, 661-662 (S.D.N.Y. 2007).

"[I]n defamatory actions, the complaint need only give defendant sufficient notice of the words at issue to allow defendant to defend himself." Condit v. Dunne, 317 F. Supp.2d 344, 368 (S.D.N.Y. 2004). It is not necessary that a plaintiff be named in a publication containing alleged libelous statements; however, if he is not named, the plaintiff "bears the burden of pleading and proving that the defamatory meaning attached to him." Bee Publications Inc. v. Cheektowaga Times Inc., 107 A.D.2d 383, 385 (4th Dept. 1985). Further, a plaintiff must plead sufficient facts to show that "the libel designates the plaintiff in such a way as to let those who knew [him] understand that he is the person meant."

6

Fetler v. Houghton Miffling Company, 364 F.2d 650, 651 (2d Cir. 1966). "It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant." Fetler, 364 F.2d at 651. Moreover, "the reference to a plaintiff may be indirect and may be shown by extrinsic facts." Bee Publications Inc., 107 A.D.2d at 385.

Defendant argues that the allegations involving Saez's use of an electrical device during the 2013 Travers Stakes did not involve Horton, and do not allege that Horton was responsible or involved in any manner with the use of an electrical device. Plaintiffs rebut Defendant's argument by citing the statements quoted in paragraphs seventeen and eighteen of the Amended Complaint. In both statements, Defendant is alleged to have used the word "they" when discussing the purported use of an electronic device during the 2013 Travers Stakes. Plaintiffs maintain that the "they" referenced in these statements refers to the owners and managers of "Will Take Charge," and, therefore, is "of and concerning" Horton.

It is clear that an issue in this case is whether it is common knowledge within the thoroughbred racing industry that a reference to a jockey's improper conduct to win a race is "of and concerning" the management of the horse.[4] However, Rule 8 requires only that

---

[4] To support the conclusion that Defendant's use of the word "they" is "of and concerning" Horton, Plaintiffs have submitted an Affidavit of Pamela Berg (Dkt. #19-2). Ms. Berg's affidavit is not considered by the Court because it is extrinsic evidence. At this time, the Court need not determine whether the Defendant's statements were, in fact, "of and concerning" Horton, as such a question is reserved for the jury. Geisler v. Petrocelli, 616 F.2d 636, 639 (2d
(continued...)

7

Plaintiffs plead a factual content supporting a claim that is plausible on its face. Here, it is plausible that Defendant's statements that "they" used an electrical device on "Will Take Charge" during the 2013 Travers Stakes is an allegation about both Plaintiffs, not just Saez. Thus, Plaintiffs have pleaded sufficient detail regarding the alleged defamatory statements to plausibly suggest that the statements were "of and concerning" both Plaintiffs. Accordingly, Defendant's motion is denied.

**V. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Horton's claims,(Dkt. #17), is **DENIED.**

**IT IS SO ORDERED.**

**Dated:March 2, 2015**

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

⁴(...continued)
Cir. 1980). The Court must only determine whether the Plaintiffs adequately stated a claim upon which relief can be granted. Defendant may challenge Plaintiffs' extrinsic evidence on this issue on summary judgment or at trial.

8